UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WILSON, #158062,

        Plaintiff,

v.

CONNIE HORTON, et al.,

        Defendants.

_____/

Case No. 2:18-cv-198

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendant Sergeant Bernhardt's motion for summary judgment. (ECF No. 34.)

Plaintiff in this case — state prisoner David Wilson[1] — filed this lawsuit pursuant to 42 U.S.C. § 1983 on November 5, 2018. In his verified complaint, Wilson asserts that while he was incarcerated at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, the three Defendants — Warden Horton, Lieutenant (Lt.) Bigger, and Sgt. Bernhardt — violated his right to exercise his religion under the First Amendment and the Religious Land Use and Institutionalized Person Act (RLUIPA). (ECF No. 1, PageID.3-4.) According to Wilson, Defendants confiscated, or affirmed the confiscation of, the prayer beads he used to stay focused on his prayers (*id.*), leading him to create his own prayer beads out of toilet paper and floss. (ECF

---

[1]    Wilson signed his complaint as "David N. Willson Bey." (ECF No. 1, PageID.7.)

No. 35-3, PageID.180.) Wilson also claimed that, though he was given a misconduct ticket and subsequent hearing, the confiscation violated his due process rights. (ECF No. 1, PageID.4-5.)

On September 28, 2020, Warden Horton and Lt. Bigger were dismissed from this case. (ECF No. 27, PageID.137-138.) Sgt. Bernhardt now moves for summary judgment, arguing that: (1) the confiscation of Wilson's prayer beads did not substantially burden his religious exercise, (2) Wilson was provided due process of law when he was given a contraband removal slip, a misconduct ticket, and a post-deprivation misconduct hearing, (3) Bernhardt is entitled to Eleventh Amendment immunity with respect to claims made against him in his official capacity, and (4) Bernhardt is entitled to qualified immunity in his personal capacity. (ECF No. 35, PageID.153-164.)

The undersigned finds that there are no genuine issues of material fact for which a reasonable jury could find that Sgt. Bernhardt substantially burdened or infringed upon the exercise of Wilson's religion when he confiscated Wilson's prayer beads, or that the confiscation was not reasonably related to a legitimate penological interest in maintaining safety, security, and hygiene at URF. The undersigned further finds that there are no genuine issues of material fact concerning the propriety of Wilson's post-deprivation hearing, and his due process claim is therefore barred by the *Parratt* doctrine. Finally, the undersigned finds that Sgt. Bernhardt is entitled to Eleventh Amendment immunity in his official capacity and, because he did not violate any of Wilson's clearly established rights, qualified immunity in his

personal capacity. Accordingly, the undersigned respectfully recommends that the Court grant Sgt. Bernhardt's motion for summary judgment.

## II. Factual Allegations

Wilson practices the religion of Islam and belongs to the Moorish Science Temple of America. (ECF No. 35-3, PageID.176-177 (Wilson's deposition).) The Moorish Science Temple of America is a religious and civic organization committed to teaching its members about their nationality and the origins of Islam. (*Id.*) The utilization of prayer beads by members of the Moorish Science Temple of America is a matter of personal choice. (*Id.*, PageID.178-180.) Wilson says he chooses to utilize prayer beads to stay focused on his religion, because he sometimes loses focus without them. (*Id.*, PageID.178-180.)

On July 3, 2018, Wilson was leaving URF's westside chow hall when Sgt. Bernhardt stopped him and asked what was around his neck. (ECF No. 1, PageID.3.) When Wilson told Bernhardt that he was wearing prayer beads, Bernhardt asked what religion Wilson practiced, and Wilson told him he practices Islam. (*Id.*) Sgt. Bernhardt ultimately confiscated the beads, telling Wilson that he would have to change his religion if he wanted to be able to wear prayer beads.[2] (*Id.*) When Bernhardt took the beads, he issued Wilson a contraband removal slip as well as a misconduct for misuse of property and contraband. (*Id.*)

On July 10, 2018, Wilson was heard on the misuse misconduct, at which time the hearing officer reiterated that if he wanted to have prayer beads, he would need

---

[2]     This is the only fact that Sgt. Bernhardt contests. (ECF No. 35-5, PageID.203.)

to change his religion. (*Id.*, PageID.3-4.) The hearing officer then found Wilson guilty of the misconduct and issued sanctions. (*Id.*, PageID.4.) Wilson appealed the guilty finding. (*Id.*)

On July 12, 2018, Wilson wrote to the Warden about the confiscation of his prayer beads. (*Id.*) The Warden did not respond to Wilson's letter but told Wilson that the staff had not violated any policies or laws by confiscating Wilson's prayer beads. (*Id.*)

Wilson knows MDOC policy provides an avenue through which prisoners can request possession of otherwise unapproved property but has never made such a request. (ECF No. 35-3, PageID.181.) After the July 3 confiscation, Wilson obtained new prayer beads, which were also confiscated. (*Id.*, PageID.180.) To avoid further sanctions, Wilson now makes his own beads out of floss and toilet paper. (*Id.*)

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. RLUIPA

In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Wilson's religious beliefs be "sincerely held." *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). Likewise, the Supreme Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise

5

protection is an assessment of 'whether the beliefs professed . . . are sincerely held,' not whether 'the belief is accurate or logical.'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial. *Hobbs*, 574 U.S. at 361 (quoting *Hobby Lobby*, 573 U.S. at 720). Moreover, the fact that the petitioner can engage in other forms of religious exercise is not relevant to whether the burden is substantial. *Id.*

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange Cnty.*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would

6

render meaningless the word "substantial." *See C.L. for Urban Believers*, 342 F.3d at 761.

Sgt. Bernhardt argues that Wilson's RLUIPA claim must be dismissed because Wilson has not shown that the confiscation of his prayer beads pursuant to MDOC Policy Directive (PD) 05.03.150 (effective Jan. 22, 2015) imposed a substantial burden on his religious exercise. (ECF No. 35, PageID.154-155.) Wilson argues that Bernhardt has not made "the necessary showing of a compelling state interest and that the least restrictive means ha[ve] been used to meet that interest." (ECF No. 36, PageID.270.) The undersigned finds that the confiscation of Wilson's prayer beads did not create a substantial burden on his religious exercise and that it is therefore unnecessary for Sgt. Bernhardt to show that the policy was the least restrictive means of furthering a compelling governmental interest.

Attachment A to MDOC PD 05.03.150 sets out an itemized list of what additional property members of religious groups may maintain while in MDOC custody. As indicated by Sgt. Bernhardt when he confiscated Wilson's prayer beads, the PD does not allow members of the Moorish Science Temple of American to possess prayer beads. However, the PD establishes a procedure through which a prisoner may request additional religious property that is not preauthorized for his religious group. *Id.* at ¶¶ JJ-KK. To utilize the procedure, a prisoner must submit a written request describing the religious item and explaining its significance to the prisoner's exercise of his religion. *Id.* at ¶ JJ.

According to Wilson, the use of prayer beads by members of the Moorish Science Temple of America is left to individual choice. (ECF No. 35-3, PageID.178.) In other words, the use of the beads is a matter of personal preference, members can pray without them. But even were the beads necessary for Wilson to pray, Wilson has taken up the practice of creating the beads with supplies that URF allows him to have, such as toilet paper and floss. (*Id.*, PageID.180.) Wilson does not assert that the use of his hand-made prayer beads is less effective in helping him focus on his prayers throughout the day — the purpose for which he chooses to utilize the beads. (*Id.*, PageID.178-179.) And Wilson did not even attempt to utilize the process set forth in MDOC PD 05.03.150 ¶¶ JJ-KK to request an accommodation for prayer beads. (*See* ECF No. 35-3, PageID.181 ("Q. Have you ever tried to do that to get special permission to have beads? A. No, 'cause I don't answer to other people about my religion.") Wilson has not created a genuine issue of material fact as to whether Sgt. Bernhardt's conduct substantially burdened his religious practice; it did not. And because the undersigned finds that there was no substantial burden, it is unnecessary to consider whether Wilson's RLUIPA claim is now moot on account of his transfer to a different facility.

V. **First Amendment Free Exercise**

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a violation of his First Amendment

8

rights, Wilson must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

Prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to legitimate penological interests." *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 ("A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." (quoting *Turner*, 482 U.S. at 89-90)).

If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.* "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id.* at 484 (quoting *Turner*, 482 U.S. at 91.)

Sgt. Bernhardt asserts that PD 05.03.150 does not infringe on Wilson's constitutional right to free exercise. (ECF No. 35, PageID.158.) Bernhardt says that even if the policy makes it more difficult for Wilson to focus on his prayers throughout the day, "a prison regulation that makes religious practice more difficult or

10

inconvenient does not rise to the level of a substantial burden." (*Id.* (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988).) Wilson responds that Sgt. Bernhardt did not merely inconvenience him, but instead "set out to punish and ban the free exercise of religion in violation of the U.S. Constitution Amendment I." (ECF No. 36, PageID.272.) This alleged animus, Wilson claims, is apparent through the confiscation of his prayer beads and the fact that Bernhardt issued a Class II, rather than a Class III misconduct. (*Id.*, PageID.274-275.) The undersigned agrees that PD 05.03.150 does not infringe on Wilson's constitutional right to free exercise, and finds that even if it did, it is reasonably related to a legitimate penological objective.

Wilson does not assert that the confiscation of his prayer beads rendered him unable to pray. In fact, he acknowledged that members of the Moorish Science Temple of America are still able to pray in accordance with their religious beliefs without the beads. (ECF No. 35-3, PageID.178-180.) And the undersigned reiterates that Wilson has found a permissible alternative by hand-making prayer beads from toilet paper and floss that seems to work for him. *See Covington v. Cadogan*, No. 1:18-CV-511, 2019 WL 2949845, at *3 (S.D. Ohio July 9, 2019) (finding no infringement on religious beliefs or practices where prisoner was afforded a towel in place of a padded prayer rug), *report and recommendation adopted sub nom. Covington v. Cadogen*, No. 1:18CV511, 2019 WL 4540982 (S.D. Ohio Sept. 19, 2019). But even assuming arguendo that PD 05.03.150 infringed on Wilson's religious beliefs and practices, PD 05.03.150 is reasonably related to "sanitation, housekeeping, and

11

security concerns." *Alexander v. Michigan*, No. 1:13-CV-1372, 2017 WL 4334341, at *6 (W.D. Mich. Sept. 28, 2017) (quoting MDOC PD 04.07.112 (effective Dec. 12, 2013)).

Male members of the Moorish Science Temple of America like Wilson may possess a red fez, a fez bag, a blue 1" lapel pin, a red 3" badge, and a nationality card as religious property. MDOC PD 05.03.150 attach. A. They may also submit a written request for individual accommodations for additional religious property. MDOC PD 05.03.150 ¶¶ JJ-KK. Limiting the possession of personal property in a prison, including religious property, is rationally related to legitimate penological interests in maintaining safety, security, and hygiene in the prisons. MDOC PD 04.07.112 ("Excessive prisoner property in housing units constitutes a fire hazard and creates sanitation, housekeeping, and security concerns.")[3] And it is through no fault of Sgt. Bernhardt that Wilson chose not to utilize the avenue provided by the MDOC to obtain additional property. Nor is Sgt. Bernhardt's state of mind in confiscating Wilson's prayer beads as contraband relevant to Wilson's First Amendment claim. Simply put, Wilson has not created any genuine issues of material fact sufficient to overcome summary judgment on his First Amendment claim.

## VI. Due Process

Wilson asserts that Sgt. Bernhardt confiscated his prayer beads without due process of law. Sgt. Bernhardt argues that even assuming Wilson had a property

---

[3]  As recognized by this Court in *Alexander v. Michigan*, property limitations are not exclusive to members of the Moorish Science Temple of America but extend to all religious groups. 2017 WL 4334341 at *7.

interest in the prayer beads, he received due process of law when he was given a misconduct ticket for possessing the prayer beads and afforded a misconduct hearing. (ECF No. 35, PageID.162.)

Wilson's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).[4] Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies as long as the deprivation was not done pursuant to an established state procedure. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Wilson's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process claim. *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Wilson has not sustained his burden in this case. In the same breath that he asserts due process requires a particular and mandatory process, Wilson concedes

---

[4] In *Daniels*, the Supreme Court found that a government official's negligent conduct does not violate the Due Process Clause, overruling the portion of *Parratt* stating that the loss of the prisoner's property "even though negligently caused, amounted to a deprivation [under the Due Process Clause]." *Daniels*, 474 U.S. at 330-31 (alteration in original) (quoting *Parratt*, 451 U.S. at 536-37).

13

that Sgt. Bernhardt wrote a misconduct report and that he was later given a misconduct hearing. (ECF No. 36, PageID.275-276; *see also* ECF No. 35-7 (Wilson's Misconduct and Hearing Reports).) He has not provided anything more than conclusory allegations that the report and hearing were inadequate. (ECF No. 36-1, PageID.289.) His argument that "the record made at the hearing contains no evidence of a fair and impartial hearings officers" is not enough.[5] (ECF No. 36, PageID.276.) Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC PD 04.07.112, ¶ B. Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC PD 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *Copeland*, 57 F.3d at 480. Wilson does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. In other words, Wilson has failed to create a genuine issue of material fact concerning Bernhardt's failure to afford him due process of law.

---

[5] Of course, nothing in the hearing report exhibits bias or partiality rendering the hearing inadequate.

## VII. Eleventh Amendment Immunity

The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Wilson seeks money damages, costs, and fees from Sgt. Bernhardt in his official capacity, that part of his lawsuit is barred by sovereign immunity.[6]

---

[6] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.*

## VIII. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd*, 563 U.S. at 741-42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666. Otherwise, the rule is not one that "every reasonable official" would know. *Id.* at 664 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix*

17

*v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

Because the undersigned finds that there are no genuine issues of material fact and that Sgt. Bernhardt did not violate Wilson's religious exercise or procedural due process rights, Sgt. Bernhardt is entitled to qualified immunity from Wilson's constitutional claims against him in his personal capacity.

## IX.    Recommendation

The undersigned respectfully recommends that the Court grant Bernhardt's motion for summary judgment because there are no genuine issues of material fact and Sgt. Bernhardt did not substantially burden Wilson's religious exercise or deprive Wilson of due process of law.  Furthermore, Sgt. Bernhardt is entitled to Eleventh Amendment and qualified immunity.

Dated:   February 22, 2022                         /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).